Case number 3-18-0550, Samantha Carroll, Executive of the Estate of Sharon Maloney, appellate by Valerie Bailey and John Simpson, v. Tommy Raoul, and Michael Ferris, in their official capacity for the State of Illinois, appellees by Christopher Turner. Valerie Bailey, and I am one of the attorneys for Samantha Carroll, independent executor of the Estate of Sharon Maloney. My co-counsel is John Simpson, and I request the Court that Mr. Simpson may present our rebuttal argument. It was interesting, I walked in today through the basement door, which I don't think that's probably the way you come in, you may come in a different way, but there on the shelf, as I walked in to my left, on the top, were the 2006 Federal Estate Tax Code and the Federal Regulations. And it looked like this. All these big thick red binders, and it was about this big. I brought with me, and had previously separated out, everything we have on the Illinois Code. I have the legislative history, I have the statute, I have the administrative code, I have the rule of the actual tax return, and these are the publications that come out about once a year on the website that tell you the rules for filing, like the instructions for the form, so to speak. I thought this was a visual reminder of what we're dealing with here today. This case is about an Illinois estate tax issue, probably something you don't get to hear about very much, and it's about something called the Credit for Tax on Prior Transfers, often called CTPT, which I'll probably get wrong half of the time, okay? And it has to do with a concept in the federal tax law that says that when there are successive estates that are taxed and then feed into other estates over a 10-year period of time, then we're not going to double tax those estates. We're not going to take that first million, take a third of it off, now you've got $667,000, and now we're going to take another third off of that, and then another third off, and eventually there's nothing left of that inheritance. That's generally how it works, okay? There's lots of rules in the calculations. The longer the distance is between the deaths, the less of a credit you receive, et cetera. But that's the general concept, and that is in Section 2013 of the Internal Revenue Code. So that's what we're dealing with in the background here. In this particular instance, Sharon Maloney died in 2015. She had a taxable estate of about $6.5 million. So she was taxable both in Illinois and at the federal level in both. Wouldn't necessarily have to have been that way, but she was. In her estate, she had assets that she had received or were deemed to have been received, which is the language we use, from the estates of her parents. Her mother, Lorraine, had died in 2007. Sharon had inherited a piece of farmland from her, valued at approximately $1 million. That was 47 percent of her mother's taxable estate. In 2011, her father died, and she inherited approximately $2.1 million from her father's estate. That represented approximately 19 percent of his estate. So those totaled over $3 million, $3.2 million. If they had not been in her estate, she would not have had a taxable estate. So you can see how – and they had already been reduced. In other words, they got reduced in those estates because of the taxes paid. So she had to get this tax return filed, right? And so they filed a federal return. They prepared the federal return, and they worked on preparing the state return. And in the pleadings, we have pledged that the tax preparer actually contacted the Attorney General's office with two questions. One of them was, what if my estate is in the gap between the Illinois amount, which is $4 million, right, that's subject to tax, and the federal amount, which at the time was either 5 or 5 point something, but there was about a million dollar gap there. Because if I read all of this, it's not clear exactly how this works. And he was told that the Attorney General would accept a tax return filed under the Illinois Estate Tax Code, acknowledging the federal elections and credits all applied, even though no federal return was filed. Okay? Go to that stack of books, right? That's – you can use all of that. The other thing that he was told, because he asked specifically about this credit for tax on prior transfers, was that it would be allowed in certain circumstances in Illinois. We don't know what those circumstances were in the mind of the person who spoke, but the position of the Attorney General's office in this case is there are none. Zero. There are no circumstances under which this credit would be allowed in Illinois. So it's not like they have taken our factual scenario and said, yes, it's allowed, but you guys don't fit it, right? There are none. So in order to understand the issues in this case, we need a little bit of background of the tax law. Okay? So before 2002, Illinois would – had what they called a pick-up tax. And there was a federal calculation. You filed a federal return. There was something listed in there called a state death tax credit. And the state of Illinois said, that's what we'll take. Okay? You calculate that number. The federal government says we can have that, and that's what we'll take. All the work gets done at the federal level, we get the check. Okay? All the calculations are done at the federal level. In 2002, that system changed, and there was no longer a credit for taxes paid at the state level, and it became a deduction. So now the systems weren't tied together, so Illinois had to either lose its money or come up with a new system. A new system is what we have today, where the code was amended to provide that the tax due to Illinois was this old federal state death tax credit as calculated and allowed. Okay? Those are important words. It's not just a calculation, but it also has to be allowed. In other words, you have to go through other steps to determine that. The legislative history doesn't tell us much, but they did tell us that it was there to restore what we've always had in the state of Illinois. To restore the tactic to retain the tax. So the key idea in this amendment was that nothing really changed in terms of the system. The system of deductions, of credits, et cetera. The key difference was the method used to compute the tax, because it was no longer calculated on the federal return. And the state created a calculator available on its website. It's the only place you find this. It's not in the regs. It's not in the statute. It's nowhere else to calculate the tax using an interrelated calculation. Everyone uses this and relies on it, because otherwise you don't know what to do on your tax return. There's no other way to do the calculations. Under the prior system, the credit for tax on prior transfers was available in Illinois, but most people didn't use it. And it's kind of complicated, but you can see it in our briefs. The bottom line is it was always a wash. The amount of money was the same. The question became, who got it? Right? And so most taxpayers in Illinois didn't bother to reduce the Illinois tax, because all it was going to do was increase what they paid to the federal government. And applying a credit at the state level didn't change their overall tax bill. It didn't matter. So even though it was available, it wasn't very commonly used. And we allege this in our complaint. But with the change in the decoupling, all of a sudden it made a difference. It made a difference, because they weren't tied together. It wasn't a zero-sum game. So the credit became really important. And it wasn't allowed by the state. Well, the credit that previously had been allowed seldom used, because it didn't change the ending to the taxpayer. But Illinois was getting the benefit of it. They were getting additional sums because of when the system was set up with the pickup tax and how those regulations worked. But when they decoupled, and they only, in the legislation, the decoupling legislation, they only addressed the recouping, what they had lost from the pickup tax. And we are not going to lose any money. And so they said, in fact, the House floor debate specifically talks about, we aren't going to lose any money. Illinois is to keep all of that money. And so the amended language doesn't reference Section 2013 at all. So isn't it almost as if they contemplated that that previous credit was no longer going to be applicable in Illinois, because we wanted to take everything that we had ever gotten under the old system. Which included the money that the taxpayers, if they had taken that credit, they were going to end up paying it then to the federal government. So it didn't matter to the taxpayer. Illinois said, no, we're not giving anybody any breaks. We're going to take that money. And actually, that is, where the taxpayer took their credit, where they did that was kind of a political statement on the part of the taxpayer. In other words, where do I want my money to go? Am I going to send my money to the federal government or to the states? All my money. Okay. So the fact that maybe the state wasn't losing anything through the credit was a political choice by the taxpayer, not built into the actual law. The interesting thing about all of this is that, and the point is that, in order to understand the entire system, you must read it together. If you just take each piece and say, this is here, I'm going to take this one and this one and this one, and read them literally, you can't get a comprehensive system that is constitutional, that is consistent, that the taxpayers can follow, and that they can understand. You can't get to the kinds of things that actually take place in the system, like the allowance of using alternate valuation. Okay? That's the theory that you can go six months after the date of death and revalue all the assets, okay, and if they are worth less and the tax is reduced in the federal system, then you can use that lower value. Okay? If you have a taxable federal estate and you apply Illinois literally, that's true. That's true. But if you have somewhere in the gap, your estate is 4.5 million, you can't use that alternate valuation if you take the state's position here that everything has to be specifically spelled out and mentioned, and you have to apply it to the T, because the federal system says, if you're going to use the alternate valuation, you're going to have to use the T. If you're going to use the alternate valuation, it must reduce the federal tax. There is no federal tax. Right? So you can't use alternate valuation. The only way we get to a system that does not create problems of fundamental fairness, that does not create uniformity issues, is to read it all together. And reading it all together brings us to the ability to take the credit, something that was always done. The system's always been read this way. The statute's always been read this way. This is how we make it work. It's why the Attorney General's website says that you can take the alternate valuation. But you can't pick and choose. You can't just say, we're going to take this piece literally and we're going to give you it here, but we're not going to take it literally here so we can have this fundamental fairness piece, but all of a sudden we're going to pull it back on the other side. Either it's read comprehensively as a whole and all of this federal law is brought in or it's not. And then we lose, especially for those estates in the gap, consistency, uniformity, we have real constitutional issues, and that's why it was done this way, it's why it was historically done this way, it's why the first answer as pled in the complaint was exactly as it was. So in this particular case, what we're asking, in this particular case, we're here on the motion to dismiss. So all of our facts are taken as, well-pleaded facts are taken as true, the court dismissed our complaint, so we're asking the court to reverse that dismissal of our complaint, reinstate our amended complaint, and allow our case to go forward. Thank you. Thank you, Mr. DeSoto. Mr. Turner. Thank you, Your Honor. May it please the Court, counsel. I'm Christopher Turner, the Assistant Attorney General here on behalf of the defendant, I believe, the Attorney General of the State of Illinois. This Court should affirm the circuit court's judgment dismissing the estate's action seeking a $181,000 tax credit against the Illinois state tax based on what counsel has explained as a federal prior transfer credit under the Internal Revenue Code. It should affirm that judgment for three reasons. First, the plain language of the Illinois State Act and the provisions of the Internal Revenue Code that it incorporates, when read as a whole, do not allow a prior transfer credit against the Illinois state tax. Second, those same terms of the Act likewise preclude the executor's due process claim that the Attorney General would somehow be required by some alleged prior practices or misrepresentations to allow a transfer credit that was not allowed under the Act. And also, the Attorney General's reading of the Act doesn't violate the Informity Clause of the Illinois Constitution. Now, this involves what I'll call the prior transfer credit, if that's all right. I think it's an easier way to refer to it. It is available under the Federal Code and has been available under the Federal Code against the federal estate tax. The Illinois tax does not incorporate that. It doesn't incorporate that because it's never incorporated that federal tax credit. Not the original Illinois state tax, that pickup tax that the counsel had referenced, not the amended Act that we're currently under now. Instead, as the appellate court previously recognized in the Brooker v. Madigan case that both parties cited, the amended Act is designed to continue to collect the same estate tax rate and the same tax revenues that were collected under the original tax act. That's true, but that's all that Illinois got under the pickup system. It was only applied to federal estate tax, but that's what Illinois got was whatever the credit amount was. It was designed to pick up the maximum allowable estate tax credit. That's what was the highest you could pick up. Actually, it was never available, the prior transfer credit, and it couldn't have been because it would have undermined that central purpose and that plain language of the original Act. That is, under counsel's example, and counsel doesn't provide any statutory argument, any sort of statutory construction of the original estate pickup tax Act that shows how or why it would have picked up or would have included that prior transfer credit. But if it somehow, under their hypothetical, had provided this credit, she claims it was a wash, would have been. If I find out what the estate tax credit is, let's say it's $100,000 under the federal system, so that's going to be now determined. That's going to be the amount under the original pickup tax. It's the highest amount, $100,000, but I can also apply against it the prior transfer credit, reduce it to $80,000. Now, you know, I wouldn't take it, she said, it's a wash because the federal government, it would just be since I'm taking less than the full state tax credit under the old system, it would go to the federal government. But that's exactly the original Act, the pickup tax, was to pick up the maximum amount. You couldn't have done it under that system, not under the plain language, not under its central purpose. You could have not left money on the table for the federal government to pick up because it was, it was, it wasn't just designed to. The explicit language was the maximum state tax credit that was available under this, under that, under the state tax credit, under Section 2011. There's simply no one, I mean, all her example, really an argument, reflects that nobody claimed the prior transfer credit under the Illinois state tax, under the original pickup tax, because they weren't allowed to. And they were never allowed to. And to do so would have undermined the entire system. Rather, the state tax credit has always, I'm sorry, the Illinois state tax has always been based upon the separate credit. The state tax credit was called in the code the state death tax credit. But that state tax credit, and what counsel has never argued, and there is no dispute as far as I know, is that that federal prior transfer credit under 2013 was never used under the code to calculate in any way the state tax credit. So if it was never used in any way to state, to calculate the state tax credit, let alone the highest amount allowed under the state tax credit, it was never then part of the Illinois state tax. Because that's what the plain language, that's how it defined the Illinois state tax, and that was the whole purpose of that prior act. And then the, when we amended the act, after the Federal Reconciliation Act, phased out the state tax credit, it was based basically then on a hypothetical. It was based on the former state tax credit, what you would have been able to collect under it. Right? It's not what you computed and allowed, as she argues. It was the actual language is the full state, the full state tax, sorry, the full credit available. That's the full state tax credit calculable as the credit would have been computed and allowed under the prior act. So under the prior code section 2011. It's a hypothetical where you look in this world, what if the Reconciliation Act, the Economic Growth and Reconciliation Act had phased out the state tax credit? What if it had never happened at all? That's what we look at. We look back at the code and calculate the state tax credit as if it had never been phased out at all. So under the new, under our current one, we still define it by that state tax credit under 2011. But the prior transfer credit was never used and has never been used in any way to calculate that state tax credit. Instead, how the code works is the state, it explicitly incorporates 2011 and the highest state tax credit under 2011. And then if you look at 2011, it bases, it basically sets forth a table which puts the ceiling, that is the highest state tax credit that's allowable. That's based on something called the federal taxable state. And therefore, that 2011 incorporates all the provisions that define the, and are used to calculate the taxable state. That's the part three of the code. It specifically says so. The code provisions which are used to create the, to calculate the gross estate. And then also the second half are the deductions against the gross estate which then give you the taxable state under part four of the code. And it says that specifically in the code. So contrary to counsel's assertion of representation, the Illinois state tax has never incorporated the entire federal code wholesale. It has never just incorporated the entire federal taxing scheme. It was never based on the federal state tax itself. It was never calculated from the state tax. It was always calculated from the state tax credit under the federal code. And then, and the parts of the code used to calculate that credit. And that never involved the prior transfer credit. So the, counsel argues that somehow there's been. But when they, when you would calculate that in Illinois, we're going to opt in. We're going to, we're going to do the full pickup. We're not going to worry about our own system of taxation, which they could have done. And then they said we're only going to take 20% of whatever that is, of whatever the federal calculation comes up to. We're going to, we want 100%. Whatever you guys get is what we want. But that 100%, when you used your example before, $100,000, let's say is owed, but then there's a credit. The federal tax would have took $20,000 off of that. So under that, are you saying that you feel that under the prior system that Illinois still would have gotten $100,000? It's the step back. Yes, it's not $100,000 tax, right? Under what, under my example, $100,000 is the state tax, what's called the state debt tax credit under the code. That was available against the federal estate tax under, like under former 2011, under section 2011. That, so that defines, since you, since you could get under the old system, a dollar for dollar credit for that 100, for that $100,000. Our system, our pickup tax is to pick up that entire $100,000. So you're getting a full $100,000 credit, reducing your federal estate tax by that $100,000. We're charging the full $100,000. That's the Illinois, now it becomes the Illinois state tax. But when they, but when you're, when you say that, you know, so the $100,000 was calculated that that's what the federal estate tax is going to be, and Illinois would pick that up. But under the scenario that you used earlier, you said, but then they were the, under the federal rules, under 2013, because of a prior tax that had been paid on that estate within 10 years, that that was going to reduce that $100,000. The federal government was going to say, hey, you only owe $80,000. So you're saying that prior to the amendments. No, you're right. And there you just, you got to the crux of it, Your Honor. So if I can interrupt, I'm sorry, but that was the point. The federal system, the code never allowed you to apply that 2013 to that $100,000 credit. And counsel has never, on the other side, has never argued in any way, and there is no way to make an argument, that the federal prior transfer credit was used in any way to calculate or reduce the state tax credit that was available under the federal estate tax. It's counsel's hypothetical, this notion that they could somehow claim the prior transfer credit against the Illinois tax. That's what I'm saying, that they could say, we're going to apply, so we have this, you've now calculated the full state tax credit under the federal system. It's $100,000. So under our act, the pickup tax, we get the full $100,000 tax that we Illinois. They want to say that you could take a $20,000 credit off against Illinois against that $100,000. Now, that means under the system, we're no longer picking up the entire $100,000 credit. Instead, it would have reduced the Illinois, if they had claimed it, if they had been able to claim it, which they couldn't have done under the plain terms of the statute. But still, if they did, it would reduce the Illinois estate tax from $100,000 to $80,000, even though the state tax credit under the code is $100,000, should have been $100,000. It won't be anymore, only because if you pay Illinois less now, $80,000, it's also limited by the amount you pay in state taxes. You can't take a federal state tax credit for money you never paid to the state. So under that system, under our system, you're reconfiguring the entire Illinois pickup tax to get less than the full $100,000. Instead, give some of that money, that $20,000 of the prior transfer credit, to the federal government. That would undermine the entire system. The whole idea of the pickup tax is to pick up the maximum allowable state tax credit under the federal code. It would just fly in the face of the entire credit. And as in the Brooker v. Madigan case recognized, the new system was intended to continue to get that same full amount. But in that case, the taxpayer, the state tried to argue that, hey, what if I just don't claim my state tax or my full state tax credit in the federal system? Then under the rules, since I'm not claiming it now, it's not something I'm being allowed or computed under the federal state tax so I can pay less or nothing to Illinois. And Brooker said, no, that's a misreading of the statute. The plain language of the new definition of the state tax credit is just like the old one. It uses the terms would have been computed and allowed because now it's a hypothetical. There is no longer, under the federal system, there's no longer a state tax credit. And that's getting, if you, there's nothing, none of the other deductions or special valuations that the Attorney General allows is inconsistent with this reading of the Act. In fact, it's all required by the plain language of the Act. So there isn't any sort of, we're not, we don't have any sort of fundamental fairness system. We apply the plain language of the Act and the code, the specific code provisions that it incorporates. So the special alternate valuation, that is under Section 2032A, I believe, which is under the gross, that's Part 3 of the code, which is used to calculate the gross estate. And therefore, it's incorporated into calculating the state tax credit or would have been under the old system. That's why it's used. The reason we still, the reason why the Attorney General will allow it in certain circumstances, even if there's no federal estate tax, is because of the plain language of the statute. The Act doesn't just define the state, the Illinois state tax as the state tax credit without any of the reductions that happened after 2001. It also says, and recognizing only an exclusion of $4 million. The exclusion is referencing the base exemption. So it's saying, also, when you calculate that state tax credit under the federal code, under 2011, you assume a lower base exemption. So the only reason you're not paying a federal estate tax inside of this is confusing. Under the scenario, they said it's because there's a lower, because now there's, you know, under the code, we know there's now $11.5 million base exemption in the federal code. At the time of Ms. Maloney's death, it was, I think, $5.5, almost $5.5 million. That's why under the alternate valuation, at that point, you wouldn't reduce the federal tax because the base exemption heats it up. But when you calculate the tax, the plain language under Section 2 or 2B, particularly of the definition of the state tax credit, tells you to assume that $4 million base exemption. It's just the plain language of the Act. And if we were wrong, Your Honor, if the Attorney General's wrong, that doesn't show you that that doesn't reflect in a way that the prior, the federal prior transfer credit now is somehow magically incorporated into the Illinois state tax. That just means, that would just mean that we are misreading the Act, the plain language of the Act, in one of the special valuations we gave. And if we didn't give that special valuation, while we think that would be wrong because the plain language of the Act says otherwise, it would render the entire system either incoherent, incomprehensible, unconstitutional. It would just mean that we shouldn't allow that valuation in certain circumstances. Now, this, as I explained, the Attorney General's reading of the Act is fully consistent with the central purposes both of the original because it reads it, the prior transfer tax had nothing, sorry, the prior transfer credit never had anything to do with calculating the original state tax Act, or the central purpose of our current amended Act, which is to collect the same tax rate and same tax revenues as under that original pickup tax. Instead, their system, the state's reading, just as this wholesale incorporation of including the, of the code, including the prior transfer credit, would undermine both of those, both of those side purposes of both the original pickup tax Act and of the current amended Act that we are under. And so unless judges have any more questions of any kind, I'll conclude that. And we would, we'll just sit on our, we will rest on our briefs and the arguments we make on our brief with respect to each of the three claims. Thank you, Mr. Turner. Any more questions? All right, I guess not. Thank you, Mr. Turner. Thank you. Now, Mr. Simpson, you're going to do the reply, right? Do the reply. May it please the court, counsel for the attorney general. I want to start where Ms. Mailey ended. And that's that this case is before this court on a grant of a motion to dismiss. That means that everything we pled stands as admitted. Why that is important is you've heard counsel for the attorney general speculate that what we have pled is simply wrong. He has said that this has never been the practice of the attorney general's office, that it has never happened. Well, first of all, you've got to, this court must look at this case as though it did happen, because we pled it and it's admitted in this procedural status. Now, I'm going to tell you what he told you is absolutely wrong also, because from 1976 until 2011, I was the person who administered this act. And the credit for tax on prior transfers has been used since the period of what I call decoupling, this period post-2001. So I'm not asking that the court take judicial notice or anything like that. But we at least should have a shot to go back to the Pekin County Circuit Court and explain how it was used in all those instances, because we have so pled it. But to go back to Your Honor's question earlier about preserving the tax, if the attorney general's interpretation is incorrect, the tax will be increased. And that is because in certain instances, the amount of credit that was used to be allowable under the federal return or the amount of federal tax that might be due limits the Illinois tax. If all you do is take the taxable estate and apply the old credit table, which is what you've just heard said that should be done, you will increase the Illinois tax in certain situations. And we can prove that, and we want the chance to prove it. So I would say that for that reason alone, our appeal should be granted. Now, just very briefly, the credit for tax on prior transfers and the credit for state death taxes have both existed since 1949. These existed both federally, and I believe Illinois, and our position is this, all the way from 1949 through the old days of the inheritance tax up until 1984, then under the new estate tax, which was the so-called pickup tax that we were doing. And the statute refers to the full credit calculable. The attorney general's office would have you believe that that just means take the tax, apply it to the table. That is not what happens. That has never been what happens. The situation is much more complicated than that with applying credits. First of all, you do that first calculation, but that's only step number one. Step number two is you compare that to the federal tax. And number three, you apply it to all other applicable credits. The calculator that both councils have referred to, the Illinois tax on the Illinois attorney general's website, does that just that. And I know it just does it because I devised it. And that is, again, what we want to show with our case, that this has been a practice all along. I know my time is brief. There is one other specific point that's very important here. And that is a change in the federal statute that is applicable now to the Illinois calculation. Under the old state death tax credit, the so-called base for the Illinois tax, it had to be applied before the credit for state death taxes. That is no longer the case. At decoupling, that was specifically removed from the federal statute. Therefore, the credit for tax on prior transfers can occur, can be used before any consideration of the state death tax credit table. And that is explained in our original appellate brief. The attorney general, again, wants to ignore the credit for tax on prior transfers simply because it doesn't directly appear in the statute. As we have pointed out in our brief and as Mary pointed out, there are numerous situations of things that apply in the calculation of the Illinois tax, but are nowhere in the Illinois statute. I don't believe that should be a proper limitation. Mr. Simpson, until when or how long are you aware that Illinois has allowed the credit for this since the decoupling statute? That would be 05, Your Honor. Right, that was 05, so did it continue until last year or is this case by case? I know that Bruce mentioned the press policy change. There's never been any announced policy change. As I said, I was there until 2011. This is the first case I was aware of where someone claimed it and it was not allowed. So I honestly can't answer Your Honor's question of when the policy was changed. But again, we're here on a grant for a motion to dismiss. These various issues I've raised, we believe we should have a chance to prove up these calculations and how the Illinois estate tax really worked and still should work. Thank you very much, Mr. Simpson. And thank you all for your attendance today. You will take this matter into advisement.